No. 24-7185

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

PLAINTIFFS' CONSUMER CLASS, ET AL.,
*Plaintiffs-Appellees*,

v.

RUTH RUBIN,
*Objector-Appellant*,

v.

HYUNDAI MOTOR COMPANY, ET AL.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 8:22-ml-03052-JVS-KES
Hon. James V. Selna

_____

## OBJECTOR-APPELLANT'S OPENING BRIEF

_____

Timothy B. McGranor
Kara M. Mundy
VORYS, SATER, SEYMOUR
AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
(614) 464-6400
tbmcgranor@vorys.com
kmmundy@vorys.com

Thomas N. McCormick
VORYS, SATER, SEYMOUR
AND PEASE LLP
2211 Michelson Drive,
Suite 500
Irvine, California 92612
(949) 526-7900
tnmccormick@vorys.com

Gary E. Mason
MASON LLP
5335 Wisconsin Avenue,
NW, Suite 640
Washington, DC 20015
(202) 292-4490
gmason@masonllp.com

*Attorneys for Objector-Appellant Ruth Rubin*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATUTORY AND REGULATORY AUTHORITIES ........................................2

ISSUES PRESENTED........................................................................3

STATEMENT OF THE CASE................................................................3

    I.      The Underlying Litigation.................................................3

    II.     The Settlement Agreement ...............................................4

    III.    Rubin's Objection.........................................................6

    IV.    The District Court's Approval of the Settlement ...................7

SUMMARY OF THE ARGUMENT ........................................................8

STANDARD OF REVIEW .................................................................11

ARGUMENT ..............................................................................12

    I.      The district court abused its discretion by placing an improper
         and heightened burden of proof on Rubin...........................13

    II.     The district court abused its discretion by approving a
         settlement that inadequately compensates millions of class
         members ..................................................................18

         A.    The Settlement does not meaningfully compensate the
              Non-Theft Class .......................................................20

         B.    The Non-Theft Class is entitled to compensation....................22

C.    The Settlement is not responsive to the claims set forth in the Complaint ...........................................................24

D.    Plaintiffs' arguments are inconsistent and illogical .................27

E.    The Settlement puts the Non-Theft Class in a worse position than if they had not settled at all .................................30

III.    The district court abused its discretion by approving a settlement that treats class members inequitably ...............................31

IV.    The district court abused its discretion by failing to conduct an exacting and thorough review of the Settlement before approving it............................................................................33

V.    The district court abused its discretion by approving the Settlement before any meaningful discovery had occurred ...............37

CONCLUSION ....................................................................................40

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
    28 F.4th 513 (4th Cir. 2022) ........................................................13

*Acosta v. Trans Union LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007).................................................37

*Alig v. Shea*,
    126 F.4th 965 (4th Cir. 2025) .....................................................29

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ....................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................26

*Carvalho v. Raybestos-Manhattan, Inc.*,
    794 F.2d 454 (9th Cir. 1986) ......................................................13

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ......................................................11

*Delay v. Gordon*,
    475 F.3d 1039 (9th Cir. 2007) ....................................................20

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ......................................................11

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002)..........................................................................2

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) ......................................................21

*Ferrington v. McAfee, Inc.*,
    No 10-CV-01455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D.
    Cal. Apr. 6, 2012) ......................................................................24

iv

*Grady v. RCM Techs., Inc.*,
    671 F. Supp. 3d 1065 (C.D. Cal. 2023) .................................................. 36, 37

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 11, 12, 19

*Hilsley v. Gen. Mills, Inc.*,
    608 F. Supp. 3d 988 (S.D. Cal. 2022) .................................................. 18, 24

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................ 11, 19

*In re Classmates.com Consol. Litig.*,
    No. C09-45RAJ, 2011 U.S. Dist. LEXIS 17761 (W.D. Wash.
    Feb. 22, 2011) ..................................................................................30

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ................................................................ 18, 21

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ...........................................................32

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Pracs., & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................17

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ........................................................... 11, 19, 34

*Koby v. ARS Nat'l Servs.*,
    846 F.3d 1071 (9th Cir. 2017) ....................................................... 18, 21, 23

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................34

*Lusk v. Five Guys Enters. LLC*,
    No. 1:17-cv-00762-AWI-EPG, 2019 U.S. Dist. LEXIS 219891
    (E.D. Cal. Dec. 23, 2019) ..............................................................36

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ................................................................ 23, 35

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ............................................................... 21

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ................................................................................ 28

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ............................................................. 11

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ........................................................ 14

*Officers for Just. v. Civ. Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 12

*Polar Int'l Brokerage Corp. v. Reeve*,
    187 F.R.D. 108 (S.D.N.Y. 1999) ........................................................ 37

*Saucillo v. Peck*,
    25 F.4th 1118 (9th Cir. 2022) .............................................................. 17, 39

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2016) ............................................................... 36

*Shin v. Plantronics, Inc.*,
    No. 18-cv-05626-NC, 2019 U.S. Dist. LEXIS 102022 (N.D.
    Cal. June 17, 2019) ............................................................................. 25, 38

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................. 27, 29

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) .............................................. 32

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................. 27

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) (en banc) ........................................20

*United States v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ...............................................13

*United States v. Ponce*,
    22 F.4th 1045 (9th Cir. 2022) ..............................................13

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ..............................................20

*Voigt v. Chicago & N. R. Co.*,
    380 F.2d 1000 (8th Cir. 1967) .............................................13

**Statutes**

28 U.S.C. § 1291 ...............................................................2

28 U.S.C. § 1332(d) ............................................................2

28 U.S.C. § 1367 ..............................................................2

**Rules**

Fed. R. App. P. 4(a)(1)(A) .....................................................2

Fed. R. Civ. P. 23(e)(2) ............................................ 11, 12, 18

Fed. R. Civ. P. 23(e)(2)(C) ...................................................19

Fed. R. Civ. P. 23(e)(2)(D) ...................................................31

Fed. R. Civ. P. 23(e)(5)(A) ...................................................13

**Other Authorities**

32 Moore's Federal Practice - Civil § 21.6 ........................ 20, 24, 33, 34

4 Newberg and Rubenstein on Class Actions § 13:39 (6th ed. 2022) ..............32

4 Newberg and Rubenstein on Class Actions § 13:40 (6th ed. 2022) ..............34

4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed. 2022) .....................31

4 Newberg and Rubenstein on Class Actions § 13:51 (6th ed. 2022) .....................24

4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed. 2022) ....................33

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018
     amendment....................................................................... 11, 30, 37

Fed. R. Civ. P. 23(e)(5)(A) advisory committee's note to
     2018 amendment.................................................................. 13, 17

Manual for Complex Litigation (Fourth) § 21.61 (2004) ...........................................1

Manual for Complex Litigation (Fourth) § 21.635 (2004) .....................................34

Manual for Complex Litigation (Fourth) § 21.643 (2004) .......................................1

# INTRODUCTION

This appeal involves a class action against Kia and Hyundai for their failure to install anti-theft devices in millions of vehicles, causing harm to millions of putative class members who owned or leased those vehicles. The district court approved a class action settlement, however, that forces the vast majority of those class members (those who have not yet suffered a theft or attempted theft) to grant a comprehensive release of claims to Defendants in exchange for virtually nothing.

Class member and objector Ruth Rubin ("Rubin") identified these glaring flaws in the Settlement and presented them to the district court through a timely filed objection. Manual for Complex Litigation (Fourth) § 21.643 (2004) ("Objectors can also play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement."). The district court dismissed Rubin's objections summarily without meaningfully analyzing the merits of her arguments or the fairness of the settlement in light of her points. By doing so, the district court violated its fiduciary duty to a significant portion of the class. *Id.* § 21.61 (explaining that courts must "adopt the role of a skeptical client and critically examine . . . the proposed settlement terms"). The district court's decision to approve an unfair settlement was incorrect as a matter of law, unreasonable in light of the evidence, and a disservice to millions of class

members.  Objector-Appellant Ruth Rubin respectfully requests that this Court reverse that decision.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(d) because the class consisted of 100 or more members, the aggregate amount in controversy exceeded $5,000,000, and at least one plaintiff and one defendant were citizens of different states.  *See* 4-ER-828.  The district court had supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.  *See* 4-ER-828.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal following entry of a final judgment.  The district court ordered final approval of the class action settlement on October 1, 2024, and issued final judgment on October 29, 2024.  1-ER-4; 1-ER-2–3.  Objector Ruth Rubin, the appellant in this case, filed a timely Notice of Appeal on November 27, 2024.  7-ER-1703–06; Fed. R. App. P. 4(a)(1)(A).  Ruth Rubin objected to the class action settlement, so she has standing to appeal.  *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).

## STATUTORY AND REGULATORY AUTHORITIES

The relevant authority, Federal Rule of Civil Procedure 23, is set forth in an addendum following this brief.

## ISSUES PRESENTED

**I.**    Did the district court abuse its discretion by placing an improperly high evidentiary burden on Objector Rubin in support of her objections?

**II.**    Did the district court abuse its discretion by approving a class action settlement that did not provide adequate compensation to millions of class members for their damages or the required release of their claims?

**III.**    Did the district court abuse its discretion by approving an inequitable class action settlement that gives some class members valuable monetary compensation and others worthless relief?

**IV.**    Did the district court abuse its discretion by failing to conduct an exacting and thorough review of the class action settlement and instead adopting the proponents' arguments without further analysis?

**V.**    Did the district court abuse its discretion by approving the class action settlement without enough information to make an informed decision since no meaningful discovery had occurred?

## STATEMENT OF THE CASE

**I.    The Underlying Litigation**

Rubin appeals the district court's approval of a class action settlement.  In 2022, Consumer Class Plaintiffs ("Plaintiffs") filed a lawsuit against Kia and Hyundai alleging that the automobile companies knowingly sold more than nine

3

million vehicles with design flaws that violated safety standards and made the vehicles easy to steal.[1]  4-ER-694–95, 826; 5-ER-1044–54.  For example, the Consolidated Amended Class Action Complaint ("Complaint") asserts that Defendants did not equip some of their vehicles with an engine immobilizer, which is an anti-theft device that prevents the vehicle from being started by anything other than an authorized key.  4-ER-825–26.

In 2020, a group of teenagers discovered this defect and started posting videos online with step-by-step instructions on how to steal the affected vehicles. 4-ER-826; 5-ER-1053.  Shortly thereafter, thefts of Kia and Hyundai vehicles increased dramatically.  4-ER-826–27; 5-ER-1063–71.  This increased theft risk, unsurprisingly, increased insurance premiums for and diminished the market value of Kia and Hyundai vehicles that lack engine immobilizers.  5-ER-1082–86.

## II.     The Settlement Agreement

In December 2022, Plaintiffs' class action and all related actions were consolidated in a multidistrict litigation ("MDL").  7-ER-1698–1702.  In May 2023, before conducting any meaningful discovery, Plaintiffs and Defendants notified the district court that they reached a settlement ("Settlement").  4-ER-794. The Settlement defines the proposed class as all persons or entities who purchased

---

[1] More specifically, Plaintiffs sued Hyundai Motor Company, Hyundai Motor America, KIA Motors Corporation, and KIA Motors America, Inc. (collectively, "Defendants").  4-ER-824.

or leased a Class Vehicle in the United States ("Class"). 3-ER-499. The Settlement defines "Class Vehicle" as all 2011–2022 Kia and Hyundai vehicles manufactured without an engine immobilizer that were sold in the United States. 3-ER-500.

The Settlement distinguishes between class members whose cars were stolen or attempted to be stolen (the "Theft Class") and those whose cars have not been stolen or attempted to be stolen (the "Non-Theft Class"). The Non-Theft Class contains substantially more members than the Theft Class. 3-ER-363–64. While the Settlement provides monetary compensation to class members in the Theft Class, including a non-reversionary common fund of at least $80 million and up to $145 million to pay for out-of-pocket losses, it provides no monetary compensation to class members within the Non-Theft Class. 3-ER-510–11. Instead, the Settlement merely offers a software upgrade (for only some vehicles) and/or reimbursement for a steering wheel lock to members of the Non-Theft Class, both of which Defendants were already offering outside of this litigation and before the Settlement was proposed. 2-ER-105–06; 3-ER-344, 446, 508–09. Despite these vast differences in compensation, the Settlement requires *all class members*, including those in the Non-Theft Class, to release any and all claims against Defendants related to theft of a Class Vehicle *or arising from facts alleged in any complaint in the MDL.* 3-ER-499, 504, 520.

5

Plaintiffs and Defendants moved for class certification and preliminary approval of the Settlement in July 2023, and final approval of the Settlement in April 2024.  4-ER-651; 2-ER-279.

## III.    Rubin's Objection

Rubin, a class member, objected to the Settlement because it fails to adequately compensate the Non-Theft Class for (1) their damages arising from increased insurance premiums and diminished vehicle values and (2) releasing their claims against Defendants.[2]  2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420.  Rubin also highlighted other deficiencies: (1) the Settlement treats the Non-Theft Class unfairly as compared to other class members, (2) counsel for Plaintiffs ("Class Counsel") did not adequately analyze the value of Non-Theft Class members' claims, in part due to the lack of discovery in this case, and (3) the district court placed a higher burden of proof on Rubin than was proper.  2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420.  Rubin communicated these objections to the district court through two comprehensive filings, which were supported by declarations and an expert report, and at two fairness hearings.  2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420.

---

[2] Rubin is an Ohio resident residing in the Columbus area.  3-ER-359.  In December 2020, Rubin purchased a 2021 Kia Soul.  3-ER-359.  Rubin is a Non-Theft Class member because her Kia Soul has not been stolen and no attempts have been made to steal her vehicle.  3-ER-359.  Following the rise in thefts of Class Vehicles, Rubin's insurance premiums have increased dramatically and the value of her Kia Soul has decreased disproportionately.  3-ER-359, 361.

6

Rubin submitted evidence that Non-Theft Class members' insurance rates increased, the value of Non-Theft Class members' vehicles decreased, and the Settlement's compensation to the Non-Theft Class does not remedy those harms. 2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420. Rubin asked the district court to deny the Settlement as it does not compensate the Non-Theft Class fairly, reasonably, and adequately.

## IV. The District Court's Approval of the Settlement

In August 2023, the district court denied Plaintiffs' and Defendants' motion for preliminary approval of the Settlement.[3] 3-ER-609, 627–38; 4-ER-641. At that time, the district court identified several issues with the Settlement, including Class Counsel's failure to estimate damages incurred by each class member and uncertainty surrounding the efficacy of the software upgrade. 3-ER-632–33. The district court continued to express concern in subsequent tentative orders and fairness hearings about the Settlement's inadequate compensation to the Non-Theft Class for their increased insurance premiums and the diminution in value to their vehicles. 2-ER-91, 156. The district court granted preliminary approval of the Settlement in November 2023, but later ordered supplemental briefing on class members' claims for diminution in value because the court did not have "sufficient information to make an intelligent judgment about whether there is a diminution

---

[3] The district court granted Plaintiffs' and Defendants' motion for class certification at that time. 3-ER-609, 621–27.

that ought to be taken into account, or it doesn't exist, or it's de minimis."  3-ER-459, 469, 471–72; 2-ER-86, 117, 273, 271.

The district court granted final approval of the Settlement in October 2024, but failed to meaningfully engage with Rubin's objections before making that decision, thereby abusing its discretion.  1-ER-2–3, 4.

## SUMMARY OF THE ARGUMENT

**I.**     The district court incorrectly placed a heightened burden of proof on Rubin when analyzing the Settlement, which is a legal error requiring reversal. Rubin objected to the Settlement because it does not adequately compensate the Non-Theft Class for increases to their insurance premiums or decreases to the value of their vehicles.  Rubin supported these arguments with ample evidence, including allegations from the Complaint, credible secondary sources, public insurance filings, Plaintiffs' and Defendants' own admissions, and an expert report that analyzed increased insurance premiums arising from the defect.  Rubin satisfied her obligation as an objector, but the district court approved the Settlement in part because it viewed Rubin's evidence as insufficient.  By requiring more from Rubin, the district court imposed the wrong burden of proof and abused its discretion.

**II.**     The district court abused its discretion by approving an inadequate settlement.  The Settlement does not compensate the Non-Theft Class for their

8

damages, which were pleaded in the Complaint and included increases to their insurance premiums and the diminution in value of their vehicles. The Settlement requires the Non-Theft Class to release their claims but does not compensate them for that release. Instead, Non-Theft Class members are in a worse position with the Settlement than without it. Indeed, if a Non-Theft Class member's car is stolen after April 28, 2025, the Settlement bars them from filing a claim with the Class Action Settlement Administrator or bringing a claim against Defendants. The district court's decision to approve the inadequate Settlement is a clear error of judgment based on unreasonable findings of fact, and thus an abuse of discretion. To the extent Non-Theft Class members did not suffer harm, which Rubin disputes but the district court concluded, the district court erred by including them in the Settlement's class-wide release. Moreover, because the Non-Theft Class members are releasing claims related to future thefts or theft attempts, the district court further erred.

**III.**  The district court abused its discretion by approving an inequitable settlement. The Settlement provides valuable relief to Theft Class members and worthless compensation to the millions of Non-Theft Class members. The Theft Class can recover monetary compensation from a common fund of at least $80 million and up to $145 million, whereas the Non-Theft Class can only receive a software upgrade (for some cars) or a steering wheel lock—"relief" that does

nothing to compensate for past harm or prevent future harm. Indeed, neither does anything to lower insurance premiums or increase car value. The district court's decision to approve the inequitable Settlement is a clear error of judgment based on unreasonable findings of fact, and thus an abuse of discretion.

**IV.** The district court did not conduct an exacting and comprehensive review of the Settlement, as it was required to do. Instead, the district court simply adopted arguments made by Plaintiffs and Defendants and summarily disposed of Rubin's objections. By failing to independently evaluate the Non-Theft Class's claims or provide a detailed explanation of the Settlement's fairness in light of that valuation, the district court violated its fiduciary duty to the Non-Theft Class. The district court's insufficient analysis is a legal error that necessitates reversal.

**V.** The district court abused its discretion by approving the Settlement before the parties conducted meaningful discovery. The district court concluded that Non-Theft Class members' claims were insignificant, so the Settlement did not need to compensate them. But the district court did not have enough information to accurately evaluate these claims. The parties did not engage in discovery addressing the details of the Non-Theft Class's insurance premiums or the value of their vehicles. Therefore, the district court could not have made an informed decision regarding the Settlement's fairness to the Non-Theft Class. The district court's decision to approve the Settlement anyway was an abuse of discretion.

10

### STANDARD OF REVIEW

This Court reviews a district court's decision to approve a class action settlement for abuse of discretion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). "A [district] court abuses its discretion when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(e) sets forth factors that district courts must consider when assessing a proposed class settlement. Fed. R. Civ. P. 23(e)(2).[4]  Additionally, settlements that take place prior to formal class certification must meet "a higher standard of fairness" and courts must conduct "a more probing inquiry." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). For example, "'[t]o survive appellate review, the district court must show it has

---

[4] When analyzing a class action settlement, this Court applies the Rule 23(e)(2) factors—which were codified in 2018—and a multi-factor test outlined in *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."); *see Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). The *Churchill* factors are; "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." 361 F.3d at 575.

explored comprehensively all factors,' and must give 'a reasoned response' to all non-frivolous objections." *Id.* (quoting *Hanlon*, 150 F.3d at 1026 and *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)) (citation omitted).

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 23(e), a court must determine that a class action settlement is fair, reasonable, and adequate before approving it. Fed. R. Civ. P. 23(e)(2). Here, Rubin objected to the settlement proposed by Plaintiffs and Defendants because it does not compensate the Non-Theft Class for their increased insurance premiums, the diminished value of their vehicles, or the required release of their claims. 2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420. By approving the Settlement, the district court abused its discretion in five ways. First, the district court placed the wrong burden of proof on Rubin. Second, the Settlement does not adequately compensate the Non-Theft Class. Third, the Settlement treats the Non-Theft Class inequitably compared to the rest of the class. Fourth, the district court did not properly investigate the Settlement's fairness, reasonableness, or adequacy to Non-Theft Class members before approving it. Fifth, the district court did not have enough information to make an informed decision because the parties had not conducted meaningful discovery addressing the value of Non-Theft Class members' claims. Each error independently requires reversal.

12

## I.   The district court abused its discretion by placing an improper and heightened burden of proof on Rubin.

The district court abused its discretion by placing a higher burden of proof on Rubin than was proper.  A district court necessarily abuses its discretion when its analysis turns on an error of law, like imposing the wrong burden of proof. *United States v. Ponce*, 22 F.4th 1045, 1046 (9th Cir. 2022); *Carvalho v. Raybestos-Manhattan, Inc.*, 794 F.2d 454, 455 (9th Cir. 1986); *Voigt v. Chicago & N. R. Co.*, 380 F.2d 1000, 1004 (8th Cir. 1967).  The standard that class settlement objectors must meet is a simple one: they must "state with specificity" the grounds for an objection.  Fed. R. Civ. P. 23(e)(5)(A).  This means that objections "must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them."  Fed. R. Civ. P. 23(e)(5)(A) advisory committee's note to 2018 amendment; *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (explaining that the standard is "somewhat analogous" to notice pleading under Rule 8(a)).

Some courts within the Ninth Circuit have seemingly gone a step further and required "proof" from an objector.  *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)) ("An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.").  While it is not clear that this is appropriate under the revised Federal

13

Rule 23, Rubin *has* offered proof of her allegations. She explained her objections in two comprehensive filings and at two fairness hearings. 2-ER-53–55, 91–99, 105–06, 154–63, 320–39; 3-ER-341–420. Rubin provided ample evidence to support those objections. 2-ER-91–99, 329–39 (discussing evidence of increased insurance premiums for Kia and Hyundai owners); 3-ER-341–43, 359–60, 366–420 (same); 2-ER-53–55, 91–93, 159, 160–62 (discussing evidence of diminished market value to Class Vehicles); 3-ER-343, 361 (same). Rubin's twenty-eight-page objection, which was supported by an expert report, case law, and credible publications, undoubtedly meets the pleading-type requirement of Rule 23(e)(5)(A) and offers proof of her allegations. 2-ER-320–39; 3-ER-341–420.

Specifically, Rubin detailed and documented her own increased insurance premiums, described other Non-Theft Class members' experiences with increased insurance premiums and decreased vehicle values, and cited sources explaining the widespread nature of these harms. 2-ER-159, 329–34; 3-ER-343, 359–60. In a span of just two years, Rubin's six-month insurance premiums for her Kia Soul increased nearly $200 from $516.16 to $716.13. 3-ER-359. Rubin's premiums were approximately twice as high as they should be given the value of her car. 3-ER-360. Rubin's insurance agent approached other insurance companies to find a less expensive premium, but no other insurance company her agent works with would insure the Kia Soul. 3-ER-360. Other class members have been quoted

14

annual rate increases of $300 and monthly rate increases ranging from $25 to $60 per month.  5-ER-1082–83.

Rubin presented evidence that Allstate Insurance Company—one of the big five auto insurers in the United States—raised insurance premiums for all owners of Class Vehicles in at least eight states due to the defect, regardless of whether the vehicle had been stolen.  2-ER-334–39; 3-ER-341–42, 368, 374–782.  In insurance rate increase request filings, Allstate expressly requested "to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies."  2-ER-333–39; 3-ER-341–42, 375–82.  Some insurance companies, like State Farm and Progressive, ceased offering insurance for certain Class Vehicles altogether.  5-ER-1083–84.

Rubin also supported the allegations in her objection with an expert's analysis into how the increased rate of thefts impacted the Non-Theft Class.  3-ER-367.  That expert, Andrew Barile, has over sixty years of experience in the insurance industry.  3-ER-367–68, 386–90.  Mr. Barile analyzed Allstate's public rate filings, the Complaint, insurance articles, anecdotal evidence, and other materials to conduct this analysis.  3-ER-368–69, 398–401.  Using this information, his knowledge of how insurance companies set premiums, and his decades of experience in the insurance industry, Mr. Barile concluded that "[t]he surge in Kia and Hyundai car theft insurance losses has been so substantial that

15

private passenger automobile insurance companies, as is their custom and practice in automobile underwriting, will continue to increase premiums for comprehensive coverage for those brands." 3-ER-367–85. Rubin also pointed to concessions by Class Counsel that insurance premiums increased due to thefts and by Plaintiffs' expert that Class Vehicles "did show evidence of lower value retention in 2024." 2-ER-54, 93, 96–97, 160–61, 208–09, 328; 4-ER-647.

Despite this evidence, the district court criticized Rubin's objections for being insufficient. The district court went beyond the requirements of the Federal Rules and this Circuit by imposing an ambiguous standard with an inappropriately heightened burden of proof on Rubin. For example, when analyzing Rubin's objection that her insurance premium increased because of the defect, the district court criticized Rubin's expert "for limiting his analysis to only eight states," only looking at an exemplar insurance company, and not discussing "nationwide" data. 1-ER-25. But none of that relates to whether Rubin stated her objection with specificity (she did), provided evidence of an increase to her insurance premium from the defect (she did), and provided evidence of increases to others' insurance premiums from the defect (she did). Similarly, as to the diminution in value claim,

16

the district court concluded that objectors "failed to find or submit any evidence of diminution of market value." 1-ER-31. This, too, is incorrect.[5]

The district court approved the Settlement, at least in part, because objectors, including Rubin, failed to satisfy its arbitrary evidentiary standard. 2-ER-52 ("The briefing on this last round was to get to the factual issues. Either side could have presented me with evidence, and I did get some evidence. I also got evidence from the plaintiffs' side. . . . [T]he fact is the opportunity to put new evidence before the Court has come and gone."). Requiring an objector to prove her own allegations is one thing; but placing the burden on Rubin to prove nationwide allegations is improper and inconsistent with both federal law and circuit precedent. Fed. R. Civ. P. 23(e)(5)(A) advisory committee's note to 2018 amendment ("Courts should take care . . . to avoid unduly burdening class members who wish to object."). Rubin, as an objector, was only required to provide evidence to prove the assertions she raised, which she certainly did. The district court abused its discretion by requiring more. *Saucillo v. Peck*, 25 F.4th 1118, 1131 n.9 (9th Cir. 2022) ("[A]pplication of an incorrect legal standard alone constitutes an abuse of discretion."); *id.* at 1133

---

[5] The district court itself noted that "[i]f a defect causes [the vehicles to be susceptible to theft], it makes sense that people would be less willing to buy or use those [vehicles] on the off-chance that they might experience the [alleged] defect. All else being equal, prices typically decrease when demand decreases." 1-ER-28–29 (quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010)).

("[The Ninth Circuit] generally do[es] not employ a 'harmless error standard for class action settlement review.'").

## II. The district court abused its discretion by approving a settlement that inadequately compensates millions of class members.

Plaintiffs and Defendants did not meet *their* burden of proof. A district court may not approve a class action settlement unless the proponents prove it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Hilsley v. Gen. Mills, Inc.*, 608 F. Supp. 3d 988, 994, 995 (S.D. Cal. 2022) (rejecting preliminary approval motion because plaintiffs did not meet "their burden of showing that the Court would likely be able to approve the proposed settlement as 'fair, reasonable, and adequate'" since the settlement failed to provide benefits to the class); *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017) ("As the proponents of the settlement, [Defendant] and the named plaintiffs bore the burden of demonstrating that class members would benefit from the settlement's injunctive relief."); *see In re Dry Max Pampers Litig.*, 724 F.3d 713, 719, 723 (6th Cir. 2013) (reversing approval of settlement because proponents did not prove that the settlement (which offered worthless compensation to class members) was fair).

When parties settle a case prior to class certification—as in this case— proponents of the settlement must meet an *even higher* burden of proof. This Court requires district courts to engage in a "probing inquiry" when analyzing a settlement proposed before formal class certification due to "[t]he dangers of

18

collusion between class counsel and the defendant." *Hanlon*, 150 F.3d at 1026; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946 ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must with-stand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."); *Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)) (citation omitted) ("[S]ettlements that occur before class certification are subject to 'a high procedural standard.' The district court must act as a fiduciary, protecting the interests of absent class members by scrutinizing the settlement's fairness in light of well-established factors.").

Plaintiffs and Defendants failed to satisfy this high standard. Instead, the Settlement does not provide adequate relief to the Non-Theft Class, which violates Rule 23(e)(2)(C). Fed. R. Civ. P. 23(e)(2)(C) (requiring courts to consider whether "the relief provided for the class is adequate" when analyzing a proposed settlement). The Settlement offers Non-Theft Class members close to nothing, which improperly disregards (1) their damages for increased insurance premiums and diminished vehicle values and (2) the Settlement's requirement that they release their claims. The district court's decision to approve the Settlement was a clear error of judgment based on erroneous findings of fact, and this Court should

19

reverse that decision. *United States v. Hinkson*, 585 F.3d 1247, 1283 (9th Cir. 2009) (en banc) (quoting *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007)) ("A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with 'a definite and firm conviction that the district court committed a clear error of judgment.'").

**A.    The Settlement does not meaningfully compensate the Non-Theft Class.**

The Non-Theft Class received nothing of value from the Settlement.[6]  The district court correctly concluded that the "compensation" made available to Non-Theft Class members—a software upgrade and/or reimbursement for an anti-theft device—is worthless.  1-ER-28 ("The Court rejected Plaintiffs' argument that the Software Upgrade or reimbursement for other anti-theft devices were adequate consideration.").  Software upgrades and steering wheel locks do not change the perception that Class Vehicles are easy to steal, so Class Vehicles will remain susceptible to theft and theft attempts.  1-ER-28 (district court agreeing that "[t]he installation of the Software Upgrade did not eliminate the fact that Class Vehicles could still be perceived by others as easy to steal"); 2-ER-329 (citing articles

---

[6] At best, the Settlement provides class members with "illusory nonmonetary benefits," which indicates potential abuse in the class action settlement context.  32 Moore's Federal Practice - Civil § 21.6; *Vassalle v. Midland Funding LLC* 708 F.3d 747, 756 (6th Cir. 2013) (concluding that the settlement was unfair because low monetary relief and injunctive relief were "perfunctory at best").

20

discussing the software upgrade's ineffectiveness at stopping thefts); 3-ER-344–45 (same for anti-theft devices).

Consequently, Non-Theft Class members' insurance premiums will remain high and the value of their vehicles will remain low. The Settlement does not compensate the millions of people in the Non-Theft Class for past harm, prevent future harm, or justify the release of their claims. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010) ("Because the consent decree released almost all of the absent class members' claims with little or no compensation, the settlement agreement was unfair and did not adequately protect the interests of the absent class members."); *Koby*, 846 F.3d at 1079 (reversing settlement approval because plaintiffs did not demonstrate that class members would benefit from the settlement's relief).

Further, this Court has noted that a Settlement's relief has "no real value" when it does not "obligate [the defendant] to do anything it was not already doing." *Id.* at 1080; *see also In re Dry Max Pampers Litig.*, 724 F.3d at 719 ("There is another reason to think the reinstated refund program brings little value to unnamed class members: most of them have already had access to it."). It is undisputed that Hyundai and Kia were *already* offering the software upgrade and steering wheel lock *outside of this litigation* and *before* the Settlement was

21

proposed. 2-ER-105–06; 3-ER-344. Rubin was contacted by Kia outside of this litigation and asked if she wanted a steering wheel lock. 2-ER-105–06; 3-ER-344, 446. Kia sent the steering wheel to Rubin and many other class members. 2-ER-105–06; 3-ER-344. Here, the Settlement does not offer any independent value to the Non-Theft Class, let alone relief that adequately compensates them for their damages and the release of their claims.

### B.    The Non-Theft Class is entitled to compensation.

The Non-Theft Class is entitled to compensation for increases to their insurance premiums, decreases to the value of their vehicles, and the release of their claims against Defendants.

Rubin presented sound and conservative estimates of the value of Non-Theft Class members' claims to the district court. 3-ER-347–49. For example, assuming just 100,000 of the "millions of current and former owners and lessees of Class Vehicles" suffered damages in the amount of $358.34 for 2024, like Rubin has, the Class stands to gain an additional $35,834,000 in damages for 2024 alone. 3-ER-347, 363, 575. Or, if even 5% of class members experienced increases to their insurance premiums in 2024, like Rubin, the total damages lost by this Settlement would total more than $160,000,000 for 2024 alone—eclipsing the maximum amount contained in the Settlement. 3-ER-348, 364. Further, assuming each Class Vehicle (of the estimated nine million) lost just $100 in value due to the defect, the

total damages would be $900,000,000. 3-ER-348–49. These examples highlight how woefully inadequate the Settlement's "compensation" is to the Non-Theft Class. The Settlement requires Non-Theft Class members to release claims worth, collectively, hundreds of millions of dollars, yet gives them nothing in return.

Even if Non-Theft Class members' claims were to result in lower damages than Rubin estimated, the Settlement would still be inadequate. Claims have significant value when brought as a class action. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 783 (7th Cir. 2004) ("[C]olorable legal claims are not worthless merely because they may not prevail at trial. A colorable claim may have considerable settlement value (and not merely nuisance settlement value) because the defendant may no more want to assume a nontrivial risk of losing than the plaintiff does."). Rubin presented evidence to the district court demonstrating that Non-Theft Class members' claims are far more than colorable. *See supra* Part I. These claims have considerable settlement value, but that value was not reflected in the Settlement.

Moreover, the Non-Theft Class's agreement to waive their rights to future claims against Defendants has value. 3-ER-499, 504, 520; *Koby*, 846 F.3d at 1080. If Rubin's Kia is stolen after April 28, 2025, she is (a) prevented from filing a claim against the common fund; and (b) because of the Settlement's release, she is

not able to bring new litigation.[7]  3-ER-510, 513, 520.  The Settlement, which

requires this waiver, must provide meaningful compensation in return.  4 Newberg

and Rubenstein on Class Actions § 13:51 (6th ed. 2022) ("The court must be

assured that the settlement secures an adequate recovery for the class in return for

the surrender of the class members' rights to litigate against the defendants.");

*Ferrington v. McAfee, Inc.*, No 10-CV-01455-LHK, 2012 U.S. Dist. LEXIS 49160,

at *31–32 (N.D. Cal. Apr. 6, 2012).  The Settlement here did not meet that

requirement—instead, it offered the Non-Theft Class worthless relief despite

requiring them to release their claims.

## C.    The Settlement is not responsive to the claims set forth in the Complaint.

The Settlement fails to compensate the Non-Theft Class for claims and

damages pleaded in the Complaint.  Courts must consider whether a proposed class

settlement is responsive to the allegations set forth in the class action complaint.

For example, courts should identify whether "[m]ajor claims or types of relief

sought in the complaint have been omitted from the settlement."  32 Moore's

Federal Practice - Civil § 21.6; *see also Hilsley v. Gen. Mills, Inc.*No. 3:18-cv-

00395-L-BLM, 2021 U.S. Dist. LEXIS 105648, at *10–11, *21–22 (S.D. Cal.

June 4, 2021) (denying motion for preliminary settlement approval in part because

---

[7] The Settlement provides that class members may submit claims for qualifying
losses within 180 days of Final Approval and Judgment.  3-ER-510, 513.

"the Settlement Agreement abandons the monetary relief requested in the amended complaint").

Here, Plaintiffs pleaded damages for increases to their insurance premiums and decreases to the value of their vehicles, in addition to citing numerous examples and sources to support those claims.  5-ER-1082–86.  For example, the Complaint alleges that all class members "suffered other damages related to their purchase or lease of the Class Vehicles in the form of diminished market value . . . as a direct result of Defendants' misrepresentations and omissions regarding the Class Vehicles' characteristics and the existence of the Theft Prone Defect."  5-ER-1085–86.  Similarly, the Complaint states that "[t]he increase in theft coverage payouts began to affect insurance companies, which in turn causes Class Members' premiums to increase."  5-ER-1082–85.  But the Settlement does not provide compensation to the Non-Theft Class for those harms.  *Shin v. Plantronics, Inc.*, No. 18-cv-05626-NC, 2019 U.S. Dist. LEXIS 102022, at \*12–13 (N.D. Cal. June 17, 2019) ("This discrepancy between the narrow relief offered to the class and the broad release of all claims . . . is striking and militates against approval.").

To justify the discrepancy between the Complaint's allegations and the Settlement's relief, Class Counsel argued that "Plaintiffs did not believe that at the time they were negotiating the proposed Settlement (and continue to believe based on additional analysis) they could prove diminution in value damages on a class-

wide basis." 2-ER-187. Class Counsel also argued that claims for increased insurance premiums are individualized and not possible to pursue on a class-wide basis, and the district court agreed. 2-ER-100–01; *see* 1-ER-24–25. While Rubin disputes that these claims are too individualized for class treatment,[8] if this were true, the appropriate response would be to carve those claims out of the Settlement—not to force class members to release those claims without compensation. 2-ER-159–60. Claims that cannot be *certified* on a *class-wide* basis cannot be *released* through a *class-wide* settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 158 (S.D.N.Y. 2008). Here, the Settlement imposes a class-wide release of all claims, which is improper under Class Counsel's theory that claims for increased insurance premiums are individualized and cannot be proven on a class-wide basis. 3-ER-520.

---

[8] As to diminution in value, Rubin cited several cases approving class settlements that provide a remedy for the diminished value of a vehicle resulting from a defect. 2-ER-156–58. As to insurance premiums, Rubin's expert provided examples of actual insurance premium increases on class vehicles due to increased theft rates, and these increases were all formulaic in nature, not individualized. 3-ER-374–82. While determining base insurance premiums can involve individualized factors pertaining to each insured, Class Counsel's "individualized" argument is a straw man because this case involves insurance premium increases for Class Vehicles due to their increased theft risks, not the computation of base premiums. By way of example, Allstate simply used "flat multiplicative factors" to "adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies." *See, e.g.*, 3-ER-377–78 (quoting Allstate's January 12, 2023, New Jersey rate filing).

Accordingly, the district court abused its discretion by approving a settlement that fails to compensate the Non-Theft Class for their claims or, in the alternative, imposes a class-wide release for harm that—according to representations made by Plaintiffs and Defendants—cannot be proven on a class-wide basis.

### D.  Plaintiffs' arguments are inconsistent and illogical.

Plaintiffs' response to Rubin's objection—that the Non-Theft Class somehow does not have cognizable damages—raises additional problems.  If Plaintiffs' position is correct (which Rubin disputes), and Non-Theft Class members are not harmed, then it follows those same Non-Theft Class members do not have standing to proceed as part of the class.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm.  No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  As the party invoking federal jurisdiction, plaintiffs "bear the burden of demonstrating that they have standing." *Id.* at 430–31.  In the class action context, "[e]very class member must have Article III standing in order to recover individual damages" and federal courts lack "the power to order relief to any uninjured plaintiff, class action or not." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).  Put simply, just because some class members have

27

standing does not mean all do, as "standing is not dispensed in gross." *Murthy v.*
*Missouri*, 603 U.S. 43, 44 (2024) (citations omitted).

The basis for Article III standing for the Theft Class members is clear—they
suffered an injury when their vehicle was stolen or attempted to be stolen as a
result of the defect.  For Non-Theft Class members, their injury came from
increases to their insurance premiums and decreases to the value of their vehicles
resulting from the defect (not from a theft or an alleged theft).  These injuries are
well-established in Rubin's objection, sufficient to demonstrate why Non-Theft
Class members have Article III standing.  But Plaintiffs abruptly shifted course
upon receiving Rubin's objection, taking the position that there was no evidence
that Non-Theft Class members suffered any injury, meaning the Non-Theft Class
did not need compensation from the Settlement.

Indeed, in their Supplemental Briefing following the first Final Approval
Hearing on July 15, 2024, Plaintiffs stated they "did not believe that at the time
they were negotiating the proposed Settlement (and continue to believe based on
additional analysis) they could prove diminution in value damages on a class-wide
basis." 2-ER-187.  Plaintiffs went further by saying "whether [Rubin] will suffer
diminished value is highly conjectural" and "there is no reliable scientific evidence
showing that at the time of settlement (or currently) diminished value due to the
Defect can be proven." 2-ER-190.  In its Final Approval Order, the district court

28

agreed, holding that "Plaintiffs have provided an expert declaration that there was not widespread diminution of market value," and that "Plaintiffs and Defendants duly considered the diminution of market value and found no evidence of such damages." 1-ER-30–31. The district court ultimately found that "the increase in insurance premiums due to the perceived risk of theft of the Class Vehicles is not quantifiable." 1-ER-24.

But Plaintiffs' argument is inconsistent and illogical. On the one hand, Plaintiffs argue that the Settlement is fair, and the Non-Theft Class does not require compensation for their injuries because those class members *were not injured*. On the other, Plaintiffs state that the Non-Theft Class still should be part of the class and forced to release their claims. The district court adopted this view. In other words, Plaintiffs and the district court agree that the entire Non-Theft Class did not suffer a concrete harm.

While Rubin disputes that holding for the reasons discussed herein, *if that were the case*, Non-Theft Class members would not have standing to proceed as part of the class. *TransUnion LLC v. Ramirez*, 594 U.S. at 437; *see also Alig v. Shea*, 126 F.4th 965 (4th Cir. 2025) (holding that plaintiffs' *class-wide* showing was "too speculative to support Article III standing"). Put simply, Plaintiffs cannot have it both ways. The Non-Theft Class was *either* (1) injured by the defect because their insurance premiums increased and the value of their vehicles

29

decreased (as was originally pleaded) and should be compensated accordingly or (2) they were not injured and do not have Article III standing to be part of the certified class.

### E. The Settlement puts the Non-Theft Class in a worse position than if they had not settled at all.

Finally, the Settlement is inadequate because it puts the Non-Theft Class in a worse position than if they had not settled at all. District courts often compare the relief provided by a proposed settlement to "the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results the potential relief" through further litigation. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. This comparison enables district courts to decide whether a settlement serves the best interests of the class.

Here, the Non-Theft Class is better served by litigation than the Settlement. This is a clear sign that the Settlement is inadequate. *See In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 U.S. Dist. LEXIS 17761, at *24–26 (W.D. Wash. Feb. 22, 2011). Without the Settlement, the Non-Theft Class retains their right to pursue claims and relief in court, whereas, with the Settlement, the Non-Theft Class must give up that right and does not receive any meaningful compensation in return. The Settlement prevents Non-Theft Class members from ever obtaining relief for the harm they have already incurred (increased insurance premiums and the diminished value of their vehicles) and for any harm they may

30

incur in the future.  For example, if Non-Theft Class members' vehicles are stolen due to the defect after April 28, 2025, which is a real possibility given the ineffectiveness of the software upgrade and steering wheel lock at preventing thefts, the Non-Theft Class cannot pursue relief because the Settlement requires them to release "*any and all past, present, and future*" claims.  3-ER-499, 504, 510, 513, 520 (emphasis added).

The district court's decision to approve the Settlement in light of (1) the value of Non-Theft Class members' claims, (2) the lack of compensation to the Non-Theft Class, (3) the Settlement's failure to compensate allegations pleaded in the Complaint, and (4) the Settlement's failure to serve the best interests of the Non-Theft Class—who make up the vast majority of class members—was a clear error in judgment and an abuse of discretion.

## III.    The district court abused its discretion by approving a settlement that treats class members inequitably.

The Settlement treats class members inequitably, which violates Rule 23(e)(2)(D).  Fed. R. Civ. P. 23(e)(2)(D) (requiring courts to consider whether "the proposal treats class members equitably relative to each other" when analyzing a proposed settlement).  A settlement that distributes relief in favor of "some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed. 2022).  Courts should

31

be "wary" of these settlements.  *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d

1052, 1067 (C.D. Cal. 2010).  For example, when class counsel negotiated

beneficial relief for some class members but "vast numbers of class members"

received "virtually worthless" relief, the Second Circuit reversed the district

court's decision to approve that settlement.  *In re Payment Card Interchange Fee*

*& Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238, 240 (2d Cir. 2016).

Here, the Settlement offers monetary compensation to the Theft Class, but

not to the Non-Theft Class (aside from a capped reimbursement for software

upgrade expenses).  3-ER-510–12.  Likewise, the Theft Class can recover for their

increased insurance premiums, but the Non-Theft Class cannot.  3-ER-511.  This

inequitable distribution of damages raises concerns about whether Class Counsel

correctly analyzed and considered the value of the Non-Theft Class's claims, or if

they instead disproportionately focused on the vehicles that have been stolen or

were attempted to be stolen.  4 Newberg and Rubenstein on Class Actions § 13:39

(6th ed. 2022) ("[T]he parties to the settlement bear the burden of establishing

fairness of the settlement; they must provide sufficient information by which the

court may evaluate the terms according to the standard provided in Rule

23(e)(2).").  Indeed, as the district court noted in its Tentative Order and the

July 15, 2024 Hearing, "there is no indication that Plaintiffs ever considered the

diminution in value claims for Class members who did not suffer a theft or theft

32

attempt, and such failure to investigate renders the Settlement unfair, unreasonable, and inadequate to half the Class." 2-ER-156.

When an objector takes issue with the way a proposed settlement treats groups of class members differently, "the court should consider whether that distinction requires a subclass or otherwise uncovers an imperfection in the class definition or the settlement terms." 32 Moore's Federal Practice - Civil § 21.6; *see also* 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed. 2022) (explaining that differential treatment "is a warning that the settlement deserves greater judicial scrutiny"). Rubin uncovered a glaring imperfection in the Settlement—its failure to compensate the Non-Theft Class adequately and equitably. The district court acknowledged this deficiency in a Tentative Order, noting that class members who did not experience a theft or theft attempt "are still releasing their claims under the Settlement" without compensation, rendering half the class without "any relief aside from the Software Upgrade or reimbursement for other anti-theft devices." 2-ER-156. But the district court abandoned this concern in its final order approving the Settlement. *See* 1-ER-24–32. The district court made a clear error of judgment by approving an inequitable settlement.

## IV.    The district court abused its discretion by failing to conduct an exacting and thorough review of the Settlement before approving it.

The district court's analysis of the Settlement was insufficient. District courts have a "'fiduciary duty' toward absent class members in assessing the

fairness of a proposed settlement." 4 Newberg and Rubenstein on Class Actions

§ 13:40 (6th ed. 2022). To meet this obligation, district courts must conduct an

"exacting and thorough" review of the settlement's terms to assess whether it is

fair, reasonable, and adequate. 32 Moore's Federal Practice - Civil § 21.6. Here,

the district court did not meet that standard, which is a legal error requiring

reversal. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (explaining

that this Court "will not affirm" a district court's approval of a class settlement "if

it appears that the district court did not evaluate the settlement sufficiently to

account for the possibility that class representatives and their counsel have

sacrificed the interests of absent class members for their own benefit").

     Even though "Rule 23 and good practice both require specific findings as to

how the settlement meets or fails to meet the statutory requirements," the district

court did not make these findings when evaluating Rubin's objections. Manual for

Complex Litigation (Fourth) § 21.635 (2004). For example, to dispose of Rubin's

objection regarding insurance premiums, the district court merely summarized the

proponents' responses and added a conclusory statement: "For the reasons

explained above, the Court OVERRULES Rubin's objections regarding increased

insurance premiums." 1-ER-24–26; *cf. Kim*, 8 F.4th at 1180 ("The district court

gave 'deference to the mediation proceedings and the judgment of the parties

regarding the reasonableness of fees,' but in so doing abdicated its independent

duty to see whether these actually excessive attorneys' fees evidenced collusion in the settlement."). Likewise, when addressing Rubin's objections regarding diminished market value, the district court adopted the opinions of Plaintiffs' expert and the information offered by Defendants from Edmunds.com to conclude that the Settlement did not need to offer relief for those claims.[9] 1-ER-29–32. The district court accepted the opinions of Plaintiffs' expert and the criticisms of Rubin's expert without further explanation. 1-ER-24–26, 29–32. But merely summarizing and adopting arguments made by the proponents of a Settlement falls far short of the district court's fiduciary duty to thoroughly investigate settlements and protect absent class members.

Similarly, the district court had a fiduciary duty to compare the expected recovery of the Non-Theft Class's insurance premium and diminution-in-value claims in litigation with the Settlement's compensation, which it failed to do. 1-ER-4–41; *Mirfasihi*, 356 F.3d at 786 (overturning settlement approval because the district judge "made no estimate of the value of the legal claims of the information-sharing class" even though district judges must "estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable

---

[9] This evidence was not consistent or reliable. First, Plaintiffs' expert admitted that Class Vehicles showed evidence of diminution in value in 2024. 2-ER-208–09. Second, Defendants' only "evidence" that class vehicles did not decrease in value was the declaration of Sung Hyan Hong who is not an expert in automotive valuation and who merely regurgitated information he found on the internet. 2-ER-161, 172–76.

approximation of that value"); *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1075–77 (C.D. Cal. 2023) (denying settlement because the court lacked information about "how deeply the putative class's claims are being discounted" and whether "the strengths and weaknesses of the case warrants whatever discount has been applied"); *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 U.S. Dist. LEXIS 219891, at *14–23 (E.D. Cal. Dec. 23, 2019) (explaining that plaintiff's comparison of the settlement to future litigation was insufficient because the plaintiff only discussed general risks of litigation that were not specific to each claim).

The district court's decision was comprised of conclusory statements and a surface-level analysis that left a gap "between the data on which it relies . . . and its conclusion that the settlement is fair to unnamed class members."[10] *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310 (6th Cir. 2016). This Court should reverse and require the district court to "fill that gap with a careful analysis" and "a reasoned explanation." *Id.* This assessment will reveal that the Settlement is not fair, reasonable, or adequate.

---

[10] The district court's insufficient analysis resulted from Class Counsel's deficient arguments. Class Counsel did not explain how they investigated the Non-Theft Class members' claims or why they valued those claims at zero, such that the Settlement did not need to compensate the Non-Theft Class for releasing their claims.

**V.     The district court abused its discretion by approving the Settlement before any meaningful discovery had occurred.**

The district court approved the Settlement prematurely.  Courts must be sure that parties "have engaged in sufficient investigation of the facts to enable the court to 'intelligently make . . . an appraisal' of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (quoting *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999)); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("[T]he nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").  When minimal discovery has occurred, courts should be concerned that "counsel may have held a weak bargaining position with little leverage to secure meaningful relief for the class." *Grady*, 671 F. Supp. 3d at 1077.

Here, Class Counsel engaged in minimal discovery regarding insurance premiums and market value despite squarely raising those issues in their Complaint.  They claim to have engaged in "confirmatory discovery . . . to verify the fairness of the Settlement benefits."  3-ER-601.  It is entirely unclear what this discovery entailed or produced.  For example, Plaintiffs say they requested documents regarding "insurance coverage for Class vehicles" from Defendants.[11]

---

[11] It is also unclear what information Defendants—automobile companies—would have regarding insurance premiums.  Instead, this information is more likely to

3-ER-585.  But Plaintiffs have never provided details regarding (1) the substance of the confirmatory discovery, (2) discovery from insurance companies to determine the extent of increased premiums, or (3) any other discovery that can verify the amount of increased premiums incurred by the Non-Theft Class.  Indeed, without the benefit of any formal discovery, Rubin's expert identified Allstate's publicly-filed documents expressly seeking "to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies."  2-ER-333–39; 3-ER-341– 42, 375–82.  The most minimal and basic formal discovery directed toward automobile insurance providers would have uncovered these highly relevant documents.  The district court could not have evaluated the Settlement's fairness appropriately because it did not have enough information to do so.  At best, Plaintiffs failed to conduct this due diligence.  At worst, Plaintiffs are leaving hundreds of millions of dollars on the table to reach a quick settlement.

Plaintiffs' failure to determine the extent of the Non-Theft Class's harm does not mean it does not exist.  *See Shin v. Plantronics, Inc.*, 2019 U.S. Dist. LEXIS 102022, at *13 ("[T]he difficulty of obtaining reliable information is no excuse for haphazard estimates, particularly where the Settlement seeks to release an all-encompassing class from virtually all claims relating to the Headphones.").

---

come from class members or the numerous insurance companies involved in parallel litigation to this case.

Instead, discovery would likely reveal (1) widespread insurance premium increases implemented by the insurance companies involved in parallel litigation to this case—who claim to have collectively suffered over $1 billion of insurance payouts relating to the increased theft risks relating to the Class Vehicles—and (2) accelerated depreciation of Class Vehicles, as pleaded in numerous paragraphs throughout the Complaint.  3-ER-449, 458; 4-ER-835–936 (repeating that "[t]he Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle"); 5-ER-939–1226 (repeating that "[t]he Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle" and "the Theft Prone Defect . . . directly impacts the value of the Class Vehicles"); 6-ER-1241–1534 (repeating that "the Theft Prone Defect . . . directly impacts the value of the Class Vehicles"); 7-ER-1545–1693 (repeating that "the Theft Prone Defect . . . directly impacts the value of the Class Vehicles").

The district court did not have enough information to analyze the Settlement properly.  Its decision to approve the Settlement anyway is an abuse of discretion. *See Saucillo*, 25 F.4th at 1131 n.9, 1133.

39

## CONCLUSION

For the foregoing reasons, Objector Ruth Rubin respectfully requests that this Court reverse the district court's approval of the Settlement and remand for further proceedings.

Date: March 7, 2025

*/s/ Timothy B. McGranor*
VORYS, SATER, SEYMOUR AND PEASE LLP
Timothy B. McGranor
Kara M. Mundy
Thomas N. McCormick

*/s/ Gary E. Mason*
MASON LAW LLP
Gary E. Mason

*Attorneys for Objector-Appellant
Ruth Rubin*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 24-7185

The undersigned attorney or self-represented party states the following:

○  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> Objector-Appellant Ruth Rubin states that Appeal No. 24-7080 (Plaintiffs' Consumer Class, et al. v. Hyundai Motor Company, et al.) is a related case. Objector Donald Birner appeals the district court's final judgment approving the class action settlement in Case No. 8:22-ml-03052-JVS-KES (C.D. Cal.).

**Signature** | s/Timothy B. McGranor       **Date** | March 7, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**                                                                 *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-7185

I am the attorney or self-represented party.

**This brief contains** | 9,324 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Timothy B. McGranor | **Date** | March 7, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*